IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCINE SHEA, | : |
|       Petitioner, | : |
| v. | : 3:14-CV-01189 |
| | : (JUDGE MARIANI) |
| MOUNTAIN VIEW SCHOOL DISTRICT, et al., | : |
|       Respondents. | : |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is an Emergency Petition for a Preliminary Injunction (Doc. 1 at 31-33). Petitioner seeks relief from a decision by the Mountain View School District Board of Directors terminating her Employment Contract as School District Superintendent without cause and without pretermination notice or hearing. For the reasons discussed below, the Court will deny the Petition.

### II. Factual Background

Both sides agree that Francine Shea was Superintendent of the Mountain View School District until she was removed by the School Board on June 16, 2014. (See Compl., Doc. 1, at ¶ 22; Resp't's Br. in Opp. to Pet'r's Pet. for Prelim. Inj., Doc. 16, at 1.) At the time of removal, Shea and the School Board were bound by an employment contract entitled "Superintendent Contract," which was submitted to the Court along with the Petition for a

Preliminary Injunction. (*See* Superintendent Contract, Doc. 1, Ex. A, at 21-25.) The parties also agree that Shea was not offered pretermination notice or hearing before she was removed on June 16. (*See* Compl. at ¶ 23; Cert. Tr., June 25, 2014, at 4:15-5:14.) However, the School District argues that its decision was supported by the "Unilateral Termination" subsection of Shea's Contract. (Doc. 16 at 1.) That provision provides, in the section entitled "Termination of Employment Contract," as follows:

> This Employment contract may be terminated by: . . . .
> e. Unilateral Termination by Board of Education – In the event of early termination during this contract by the Board, the Superintendent would be entitled to continuation of salary and personal leave reimbursement as stated [elsewhere in the Contract] only for five months (or until the end of the contract, whichever is less) or upon acceptance of employment in another position; and no other benefits of this contract, of Board policy, or of past practice of the school district.

(Doc. 1, Ex. A, § 11(e).)

Upon notice of termination, Shea filed the instant Petition for a Preliminary Injunction, as well as a civil Complaint which alleged violations of her civil rights under the Fourteenth Amendment to the United States Constitution (Count I), Breach of Contract (Count II), and Negligent Infliction of Emotional Distress (Count III), and requested compensatory and punitive damages (Counts III and IV). The School District argues, however, that, because—according to its own Brief—Petitioner's termination was "without cause," (Doc.16 at 1), then

2

Petitioner is only entitled to the rights spelled out in her Contract, which do not require any greater procedures than the Board actually afforded her, (see id. at 8-11).[1]

## III. Standard of Review

"The decision to grant or deny a preliminary injunction is committed to the sound discretion of the district court." United States v. Price, 688 F.2d 204, 210 (3d Cir. 1982) (citing Stokes v. Williams, 226 F. 148, 156 (3d Cir. 1915)).

> [W]hen ruling on a motion for preliminary injunctive relief, a district court must be convinced that consideration of the four following factors favors the granting of preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the

---

[1] The Court finds it difficult to believe, as the Respondents assert, that Shea's firing was "without cause," if "cause" is given its ordinary meaning. "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they have a technical sense." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 9 (2012); see also Harris-Walsh, Inc. v. Borough of Dickson City, 216 A.2d 329, 335 (Pa. 1966) ("Both by statute and decisional law we are required to construe words and phrases according to their common and approved usage; statutes are presumed to employ words in their popular and plain everyday sense and the popular meaning of such words must prevail unless the statute defines them otherwise or unless the context of the statute requires another meaning."). Cause is defined as "a reason for an action or condition" and "something that brings about an effect or a result." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 196 (11th ed. 2009).

To assert, as do the Respondents, that Francine Shea was discharged without cause requires this Court to accept the proposition that the Board of Directors of the Defendant School District had no reason for discharging her. This in turn suggests that the School Board acted on an irrational whim, with no basis for its decision. Thus, Respondents' representation to this Court that the Plaintiff was discharged without cause is disturbing, and seems plainly disingenuous—a term not lightly employed by this Court, but appropriate here.

Even if the Respondents' position is understood as meaning only that the School Board had no cause for the Plaintiff's discharge under Section 10-1080 of the Pennsylvania Public School Code, 24 P.S. § 10-1080, a position not reasonably to be gleaned from the Respondents' submissions thus far, the assertion that Plaintiff's discharge was without cause still presents Respondents as admitting that they acted capriciously. Nonetheless, at this initial stage of the proceedings, the Court need not inquire further into Respondents' assertions, because, as discussed below, with respect to the application of federal due process law, the distinction between terminations with and without cause is irrelevant.

3

nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.

Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003). "The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." Am. Telephone & Telegraph Co. v. AT&T Winback & Conserve Program, 42 F.3d 1421, 1427 (3d Cir. 1994) (quoting Merchant & Evans, Inc. v. Roosevelt Bldg. Prods., 963 F.2d 628, 632-33 (3d Cir. 1992)).

## IV. Analysis

Upon review of the record so far developed,[2] the Court finds that, while Petitioner has a high likelihood of success in her lawsuit, she has not shown that her harm is the kind of "irreparable harm" that permits the issuance of a preliminary injunction as opposed to a monetary judgment. The reasons for this conclusion follow.

### a. Likelihood of Success on the Merits

The uncontradicted facts at this stage of the proceedings show that Francine Shea was a government employee subject to a written employment contract. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576, 92 S. Ct. 2701, 2708, 33 L. Ed. 2d 548 (1972). "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to

---

[2] The parties have repeatedly stated that they believe no evidentiary hearing is necessary to develop the record beyond the written one already provided. (See Cert. Tr., June 25, 2014, at 2:16-4:11; Cert. Tr., June 27, 2014, at 2:15-4:14.) Accordingly, the Court proceeds only on the basis of the written submissions before it.

4

it." *Id.* at 577. This entitlement is established by "the existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* The Supreme Court has held that this principle of "entitlement" operates to create property interests in public employment, both for public school teachers subject to written contracts and even "to a teacher hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment." *Id.* at 576 (collecting cases).

Moreover, once these rules and understanding create a property interest in continued public employment, "the Due Process Clause provides that [that interest] cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985). "While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S. Ct. 1633, 1650, 40 L. Ed. 2d 15 (1974) (Powell, J., concurring in part)) (internal alterations omitted). Therefore, a public employee with a property interest in continued employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," before he may be terminated. *Id.* at 546.

While Respondents argue, without citation, that *Loudermill* only applies to terminations for cause, and is therefore inapplicable to Petitioner's case, such an interpretation is not supported by a fair reading of *Loudermill*, which requires pretermination hearings in *all* cases in which a public employee has a property interest in continued employment. Here, the record shows that Shea had a written contract by which she was "hired and retained for a 3 year period commencing with her first official work day July 1, 2012, and ending June 30, 2015." (Doc. 1, Ex. A., at § 1.) Based on this clear and unequivocal language, the School District appears to have created a legitimate claim of entitlement to employment during the specified term, and would therefore have vested Shea with a property interest in her employment until June 30, 2015.

Respondents' reliance on Section 11(e) of the Employment Contract as allowing termination without notice or hearing is misplaced for at least three interrelated reasons. First, Respondents' argument appears to stretch the language of Section 11(e) too far. By its own language, that Section only authorizes unilateral termination of the Contract by the Board, and then specifies the Superintendent's rights "in the event of early termination." (*Id.* at § 11(e).) This language, however, leaves open the more immediate issue of the means by which early termination is effected. The mere authorization of unilateral termination cannot be taken to include termination that violates the Constitution's Due Process Clause without a more explicit statement to that effect. *See* pp. 8-9, *infra*. Rather, in the absence of explicit language to the contrary, the Court must presume that the authorization of

"unilateral termination" actually refers to "*constitutionally permissible* unilateral termination." Moreover, while, hypothetically, language in Section 11(e) allowing termination at will could prevent Shea from holding a property interest in her job, in that it would nullify her expectation in continued employment, the language that actually appears the face of the Contract does not indicate that the phrase "unilateral termination" should be taken to exclusively denote "at-will termination" as opposed to simply "unilateral termination for cause." Indeed, given that the Contract itself specifies a fixed term, the latter interpretation appears more likely.

Second, to rely, as Respondents urge, on interpretations of Petitioner's Contract in light of the Pennsylvania School Code in order to limit Shea's property interest in continued employment, (*see* Doc. 16 at 8-11), would appear to accept the bitter-with-the-sweet approach to Due Process protections expressly rejected in *Loudermill*. This approach held that "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of [Petitioner] must take the bitter with the sweet." *Arnett*, 416 U.S. at 153-54. In other words, the bitter-with-the-sweet approach held that the substantive content of a claimant's property interest is defined and limited by the "procedural mechanism for enforcing that right." *See Loudermill*, 470 U.S. at 540. The *Loudermill* Court ultimately rejected that approach, however, holding that "it is settled that the 'bitter with the sweet' approach misconceives the constitutional guarantee." *Id.* at 541. The Court continued:

7

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.  The categories of substance and procedure are distinct.  Were the rule otherwise, the Clause would be reduced to a mere tautology.  "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.  The right to due process is conferred, not by legislative grace, but by constitutional guarantee.  While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. . . .  In short, once it is determined that the Due Process Clause applies, the question remains what process is due.  The answer to that question is not to be found in the [state] statute.

*Id.* (internal citations, alterations, and quotation marks omitted).

Thus, what is at issue in the present case is Shea's constitutionally-recognized property interest.  That property interest would have been created when she entered into her contract.  Given that the contract is for a fixed term, and contains no indicia from which the Court could infer that it is an at-will contract, she had a legitimate expectation and entitlement to continued employment.  That entitlement is mandated by the Due Process Clause and cannot be modified by other procedures in the Pennsylvania school code or by the questionable interpretations of her contract asserted by Respondents.

Third, while "the hearing required by due process is subject to waiver," *Boddie v. Connecticut*, 401 U.S. 371, 378-379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971), and while waiver may occur by contract, such waiver may only occur "where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver," *Erie*

*Telecomm., Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988). Even more fundamentally, "a waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95, 92 S. Ct. 1983, 2002, 32 L. Ed. 2d 556 (1972). Here, the alleged "waiver" is not at all clear in that, as discussed above, the provision on which Respondents rely is not phrased as a substitute for a hearing, but only authorizes "unilateral termination" without specifying the procedures by which that termination would take place. Moreover, there is no evidence at this stage of the proceedings that Shea understood this unclear language to be a waiver of her constitutional rights and then entered into the Contract with full knowledge of that waiver.

In conclusion, it is the line of Supreme Court case law encapsulated in *Roth* and *Loudermill* that controls here, not the provisions of the Pennsylvania school code or questionable interpretations of Petitioner's Employment Contract. That being the case, the Court finds that Petitioner has a high likelihood of success on her underlying Complaint.

### b. Irreparable Harm to Petitioner Absent Injunctive Relief

Nevertheless, notwithstanding Petitioner's likelihood of success on the merits, the Court still must deny her Petition because she has not shown that she would be irreparably harmed within the meaning of relevant case law if her preliminary injunction were denied.

"In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (quoting *Instant Air Freight Co. v. Air*

*Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). However, "[e]conomic loss does not constitute irreparable harm." *Id.* Nor is "[c]onstitutional harm . . . necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction," *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989), because, if a plaintiff "has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983." *City of Los Angeles v. Lyons*, 461 U.S. 95, 113, 103 S. Ct. 1660, 1671, 75 L. Ed. 2d 675 (1983). In terms of all types of harms,

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Virginia Petro. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958), cited with approval in *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974).

Following this reasoning, the Third Circuit has held that a plaintiff who was offered a procedurally deficient *Loudermill* hearing and therefore had a high likelihood of success on the merits was nonetheless not entitled to a preliminary injunction because his "claimed injury [was] purely economic in nature and thus compensable in money." *See Morton v. Beyer*, 822 F.2d 364, 371-72 (3d Cir. 1987). Moreover, though the *Morton* court noted that the Third Circuit

> has recognized that "the fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury," *United Steelworkers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir.1979)[, it has] emphasized, however, that "the injury must be of a peculiar nature, so that compensation in money cannot atone for it." *A.O. Smith Corp.*, 530 F.2d at 525.

*Id.* at 372; for examples of such cases in the constitutional context, see *Beattie v. Line Mountain School District*, ___ F. Supp. 2d ___, 2014 WL 131637 (M.D. Pa. 2014) (enjoining School District from preventing female students from joining male wrestling team); *Buck v. Stankovic*, 485 F. Supp. 2d 576 (M.D. Pa. 2007) (enjoining County Register of Wills from requiring undocumented alien to prove lawful presence in United States as a precondition for receiving a marriage license).

The present case, though arising under the Constitution, is clearly not of this peculiar nature, but rather fits squarely under the logic of *Morton*. Just as in *Morton*, Shea was allegedly deprived of the *Loudermill* hearing that she was owed by law. But the *Morton* decision nonetheless indicates that, when a lack of a *Loudermill* hearing is the sole basis of a constitutional claim, the plaintiff's subsequent monetary remedies are sufficient to repair her harm and defeat a request for a preliminary injunction.[3]

While Petitioner argues that she has suffered peculiar harm on the basis that she "cannot pursue other gainful employment in the field of education in which she has spent

---

[3] To the objection that monetary remedies provide insufficient ex ante protection for a litigant's constitutional rights, the Circuit has noted that "[t]o the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Hohe*, 868 F.2d at 73 n.6 (quoting *Carey v. Piphus*, 435 U.S. 247, 256, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978)).

11

her entire career," because "given our economic environment, particularly the current state of finances in public education in the Commonwealth of Pennsylvania, [a person cannot] reasonably expect that anyone would hire someone who has been unilaterally removed, mid-contract, with nothing but satisfactory ratings for a superintendent, yet cannot provide any reason for the removal," (Pet'r's Reply to Resp't's Br. in Opp., Doc. 17, at 6), such statements only amount to economic or reputational impairments, which *Morton* has already found, even if valid, to not be "irreparable harms" for preliminary-injunction purposes. In *Morton*, the plaintiff asserted that "irreparable harm is established to his name and reputation as a corrections officer as a result of his illegal suspension" without a proper *Loudermill* hearing. *Morton*, 822 F.2d at 372 n.13. In rejecting this argument, the Circuit noted that it had only found irreparable harm to stem from adverse action impacting the business or reputation of a plaintiff (in that case, a licensed harness racing trainer), when that plaintiff was "potentially *barred*, not merely impaired, from obtaining employment," *i.e.*, from the suspension of his license to engage in his business. *Id.* (citing *Fitzgerald v. Mountain Laurel Racing Inc.*, 607 F.2d 589, 598 (3d Cir. 1979)); *see also McBride v. Bell of Pennsylvania*, 1989 WL 5343, at *2 (E.D. Pa. 1989) (holding that, under *Morton*, "the termination of Mr. McBride's employment by Bell and of his company-provided health and disability benefits will not result in irreparable injury" but rather "would result in purely economic consequences to Mr. McBride, damage that is compensable in money"). Likewise, Petitioner's arguments can at most show that she was "impaired" from obtaining

employment; she is not legally barred from finding a new job somewhere else. Under Third Circuit case law, any such "impairment" that Petitioner may suffer in this sense cannot amount to the "irreparable harm" sufficient to grant a preliminary injunction.

### c. Harm to Nonmoving Party and Public Interest

Because Petitioner's request for a Preliminary Injunction fails the "irreparable harm" test, the Court need not consider the remaining two factors, namely, whether the harm to the nonmoving would outweigh the benefit to the movant in granting the preliminary injunction or whether a preliminary injunction is in the public interest. Clearly, if the preliminary injunction is legally barred by the "irreparable harm" test, then Respondents would be significantly harmed if it were granted, and it would not be in the public interest to grant a preliminary injunction in violation of Third Circuit precedent.

### V. Conclusion

For the foregoing reasons, Petitioner's Petition for a Preliminary Injunction (Doc. 1 at 31-33) is **DENIED**. A separate Order follows.

_____
Robert D. Mariani
United States District Judge

13